UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JEANNIE DUNSMORE,               )
                                )  No. CV-05-0340-MWL
          Plaintiff,            )
                                )  ORDER GRANTING DEFENDANT'S
 v.                             )  MOTION FOR SUMMARY JUDGMENT
                                )
JO ANNE B. BARNHART,            )
Commissioner of Social          )
Security,                       )
                                )
          Defendant.            )
                                )
_____ )

     BEFORE THE COURT are cross-motions for summary judgment,

noted for hearing without oral argument on August 14, 2006.  (Ct.

Rec. 14, 22).  Plaintiff Jeannie Dunsmore ("Plaintiff") did not

submit a reply brief.  Attorney Lana Cece Glenn represents

Plaintiff; Special Assistant United States Attorney Thomas M.

Elsberry represents the Commissioner of Social Security

("Commissioner").  The parties have consented to proceed before a

magistrate judge.  (Ct. Rec. 9).  After reviewing the

administrative record and the briefs filed by the parties, the

Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 22)

and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 14).

1

**JURISDICTION**

2    Plaintiff protectively filed for Disability Insurance

3   Benefits ("DIB") and Supplemental Security Income ("SSI") benefits

4   on June 5, 2002, alleging disability since April 24, 2000, due to

5   neurological problems, severe whiplash, memory loss, shoulder and

6   neck pain, TMJ, depression and headaches.  (Administrative Record

7   ("AR") 68-71, 430-433, 434).  Her applications were denied

8   initially and on reconsideration.  On July 15, 2004, Plaintiff

9   appeared before Administrative Law Judge ("ALJ") John R. Hood, at

10  which time testimony was taken from Plaintiff, medical experts

11  Arthur B. Craig and Allen D. Bostwick and vocational expert Daniel

12  R. McKinney.  (AR 447-501).  On August 19, 2004, the ALJ issued a

13  decision finding that Plaintiff was not disabled.  (AR 19-28).

14  The Appeals Council denied a request for review on September 1,

15  2005.  (AR 8-10).  Therefore, the ALJ's decision became the final

16  decision of the Commissioner, which is appealable to the district

17  court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action

18  for judicial review pursuant to 42 U.S.C. § 405(g) on October 27,

19  2005.  (Ct. Rec. 2).

20

**STATEMENT OF FACTS**

21    The facts have been presented in the administrative hearing

22  transcript, the ALJ's decision, the briefs of both Plaintiff and

23  the Commissioner and will only be summarized here.  Plaintiff was

24  41 years old on the date of the ALJ's decision, has a high school

25  education and has past work experience as a janitor, a beautician,

26  a cook and a store cashier.  (AR 20).

27  ///

28  ///

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed

impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

///

///

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

///

///

///

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since 1999. (AR 20).  At step two, the ALJ determined that Plaintiff has the severe impairments of musculoskeletal injury complaints associated with an automobile accident, including dizziness, headache, right shoulder pain with vague symptomatology, vision difficulties, TMJ/bilateral jaw dysfunction, and a not-otherwise-specified neurological disorder, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 26).  The ALJ specifically found that

///

///

Plaintiff's treatment records fail to show that she suffers from any significant mental capacity difficulties that would pose any significant impairment in her ability to perform basic work-related activities in a normal work setting.  (AR 23).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to preform light exertion level work activities.  (AR 24).  Specifically, the ALJ held that Plaintiff retained the following functional capacity:  at two hour intervals and with normal breaks, she has six-hour sitting, standing, and walking capacities, and a lifting capacity of up to 20 pounds occasionally and 10 pounds frequently.  (AR 24).

At step four of the sequential evaluation process, and based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was able to perform her past relevant work as a janitor, beautician, cook and store cashier.[1]  (AR 24). Therefore, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 22-24).  In addition, the ALJ considered Plaintiff's age, educational background, work experience and RFC, as well as the testimony of the vocational expert and the Medical Vocational Guideline rules ("Grids"), to find that, alternatively at step five, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform despite her limitations.  (AR 24-25).

---

[1]The Commissioner concedes that the ALJ improperly defined Plaintiff's past work as a cook and a cashier II as past relevant work because Plaintiff performed that type of work more than 15 years prior to the ALJ's decision. (Ct. Rec. 22-2, p. 23 n. 4).  The Commissioner also acknowledges that the ALJ improperly included Plaintiff's past relevant work as a janitor as this type of job requires a RFC for medium to heavy exertion work, inconsistent with the ALJ's finding that Plaintiff was limited to light exertion work. (*Id.*)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.   The ALJ erred by failing to conclude at Step Three that Plaintiff's impairments, when combined, equaled a Listings impairment;

2.   The ALJ erred by failing to properly consider and evaluate the medical opinions of record;

3.   The ALJ erred by failing to make proper credibility findings as to the credibility of Plaintiff and lay witnesses; and

4.   The ALJ erred by relying on a hypothetical presented to the vocational expert which did not include all of Plaintiff's limitations.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.  Credibility**

**1.   Plaintiff**

Plaintiff argues that the ALJ did not make specific findings that justify a determination that Plaintiff was not credible. (Ct. Rec. 15, pp. 45-48).  The Commissioner responds that the ALJ appropriately gave clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff.  (Ct. Rec. 22-2, pp. 7-12).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.

1995).  However, the ALJ's findings must be supported by specific
cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
1990).  Once the claimant produces medical evidence of an
underlying impairment, the ALJ may not discredit her testimony as
to the severity of an impairment because it is unsupported by
medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
1998) (citation omitted).  Absent affirmative evidence of
malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "clear and convincing."  *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir. 1995).

    In this case, as noted by the ALJ, there is affirmative
evidence of the Plaintiff's malingering.  When there is
affirmative evidence of malingering, the ALJ need not provide
clear and convincing rationale for rejecting Plaintiff's
subjective testimony.  *Smolen v. Chater*, 80 F.3d 1273 (9th Cir.
1996); *Lester*, 81 F.3d at 834.

    As noted by the Commissioner, on October 17, 2002, John F.
McRae, Ph.D., diagnosed Plaintiff with malingering after
psychological testing revealed she was not putting forth maximum
effort and her scores indicated she was likely malingering.  (AR
343-344; Ct. Rec. 22-2, pp. 9-10).  Dr. McRae indicated that
Plaintiff was "withholding effort," the injury Plaintiff described
would not cause the memory problems she alleged, and Plaintiff
made an "apparent volitional decision to suggest that she has more
memory problems than she has."  (AR 343-344).  He further noted
that psychological testing suggested that Plaintiff "exaggerated
significantly" problems with her visual memory.  (AR 344).
///

On March 29, 2004, Ronald M. Klein, Ph.D., examined Plaintiff and noted evidence of malingering in virtually every objective test he performed. (AR 413-423). Dr. Klein noted that Plaintiff's results on the Wechsler Memory Scale Revised would place her within the severely mentally impaired range and would be suggestive of someone requiring 24-hour nursing care on a long-term basis.[2] (AR 421). These same results were mirrored on the Stroop Color Word Test which further suggested a lack of adequate effort and appeared to be a "malingered performance." (AR 421). Dr. Klein indicated that Plaintiff's scores on the Attention/Concentration Index and the Delayed Recall Index could only be identified as a "malingered performance for the purpose of trying to portray herself as extremely impaired." (AR 421). The MMPI-2 suggested that Plaintiff was trying to portray herself as having multiple psychological problems and was suggestive of "gross exaggeration consistent with a malingered performance." (AR 422). Dr. Klein diagnosed malingering and concluded that Plaintiff has not suffered psychological or neuropsychological injuries as a consequence of her motor vehicle accident. (AR 422-423). He also reported that although the diagnosis of malingering is always one made with caution and concern and is often difficult to arrive at, in this case, it was a relatively straightforward process. (AR 423).

A July 19, 2001 evaluation of Plaintiff performed by Mahlon Dalley, Ph.D., is further suggestive of Plaintiff's malingering and lack of effort on testing. Dr. Dalley opined that Plaintiff

---

[2]However, Dr. Klein indicated that Plaintiff was an independent adult who solely cares for her minor daughter and who successfully uses public transportation. (AR 420-421).

had no cognitive or psychological disability that would prevent
her from working in an entry-level position.  (AR 246).  Although
Dr. Dalley noted that Plaintiff appeared to give a valid effort
during the testing and the results were believed to be an accurate
reflection of her functioning (AR 246), Dr. Dalley also indicated
that the results of the Portland Malingering Scale were consistent
with individuals who are not motivated to do well on the testing.
(AR 242).

The ALJ determined that despite Plaintiff's voluminous
complaints, the fact that "malingering" has been indicated,
diagnostic testing has been unremarkable, and her medical records
do not support the degree of limitation complained of, Plaintiff's
complaints and allegations could not be found to be fully
credible.  (AR 23).

The ALJ is responsible for reviewing the evidence and
resolving conflicts or ambiguities in testimony.  *Magallanes v.
Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the
trier of fact, not this Court, to resolve conflicts in evidence.
*Richardson,* 402 U.S. at 400.  The Court has a limited role in
determining whether the ALJ's decision is supported by substantial
evidence and may not substitute its own judgment for that of the
ALJ even if it might justifiably have reached a different result
upon de novo review.  42 U.S.C. § 405(g).  As noted by the
Commissioner, while Plaintiff interprets the evidence more
favorably, the ALJ's interpretation is rational as well as
supported by record evidence.  (Ct. Rec. 22-2, p. 12).
Accordingly, after reviewing the record, the undersigned judicial
officer finds that the ALJ provided the requisite specific cogent

reasons for finding Plaintiff not fully credible in this case. Plaintiff's complaints and allegations were discounted on permissible grounds.

**2. Lay Witnesses**

Plaintiff also contends that the ALJ erred by not making proper credibility findings as to the testimony of lay witnesses Mike Redfern, Plaintiff's neighbor (AR 103-107), and Susan Cunningham, Plaintiff's sister (AR 114-118).  (Ct. Rec. 15, pp. 48-49).  The ALJ may not ignore or improperly reject the **probative** testimony of a lay witness without giving reasons that are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (emphasis added).  The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).

Mr. Redfern's statement was not probative.  Mr. Redfern's statement indicated that Plaintiff cares for and does "everything" for her daughter, described her ability to participate in household chores as "good" and noted that Plaintiff watches TV or listens to the radio "all the time."  (AR 105-106).  His statement did not indicate that Plaintiff had any particular significant limitation and did not provide a basis for finding functional limitations contrary to the ALJ's RFC conclusion.  (AR 103-107).

The statement of Plaintiff's sister was also not particularly probative.  Ms. Cunningham, like Mr. Redfern, indicated that Plaintiff cares for her daughter.  (AR 116).  She stated that Plaintiff cooks, cleans house, does the laundry, grocery shops, and takes her daughter to doctor appointments.  (AR 116).  While

Ms. Cunningham described Plaintiff's memory difficulties, personality changes since the motor vehicle accident and "chronic pain" complaints, nothing in her report endorses greater limitations than those accounted for by the ALJ in his RFC determination. As noted above, Plaintiff is a malinger with a history of exaggerating her symptoms, in particular her alleged memory loss, to portray herself as extremely impaired. *Supra*. Plaintiff's misrepresentation of limitations likely transcends her doctors appointments into her everyday life and would thus likely impact the observations of lay witnesses.

Although the ALJ failed to specifically address the statements of Mr. Redfern and Ms. Cunningham, it is clear that the ALJ considered Plaintiff's functional limitations in light of the credible evidence of record. Any consideration of the testimony of those lay witnesses does not indicate that Plaintiff is limited to a greater extent than that found by the ALJ in this case. Furthermore, the lay witnesses' testimony was not expressly rejected by the ALJ, and the ALJ was therefore not required to give an explanation for his consideration of their testimony. Accordingly, the ALJ did not err with regard to the lay witnesses' testimony in this case.

**B.  Medical Evidence**

Plaintiff contends that the ALJ erred by improperly rejecting testimony from her treating and examining physicians of record. (Ct. Rec. 15, pp. 41-45). The Commissioner responds that the ALJ properly considered and evaluated the medical evidence of record. (Ct. Rec. 22-2, pp. 18-21).

///

The courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific,

legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ determined that Plaintiff retained the RFC to preform light exertion level work activities. (AR 24). Specifically, the ALJ held that Plaintiff had the following functional capacity: at two hour intervals and with normal breaks, she has six-hour sitting, standing, and walking capacities, and a lifting capacity of up to 20 pounds occasionally and 10 pounds frequently. (AR 24). The ALJ found that Plaintiff's treatment records failed to show that she suffers from any significant mental capacity difficulties that would pose any significant impairment in her ability to perform basic work-related activities in a normal work setting. (AR 23).

Plaintiff provides a list of individuals who have treated or examined Plaintiff, including Cynthia Schroeder, Dr. Maddox, Dr. Stanek, Dr. Lueder, Dr. Baker, Dr. Janes, Dr. Howland, Dr. French, Dr. Throwe, Dr. Wylie, Dr. Scott, Dr. Guzzardo, Peter Endyke, Dennis Hyatt and Dr. Domitor, and argues that the ALJ failed to give specific reasons for rejecting each individual treating and examining physician's opinion. (Ct. Rec. 15, p. 43-45). Plaintiff directs the Court's attention to the fact section of her brief, but provides no allegations of any specific physician or medical source opinion that was improperly rejected.

The ALJ gave a detailed review and analysis of the record. (AR 21-23). The ALJ indicated that Plaintiff's diagnostic testing was unremarkable, including an MRI of her head after multiple sclerosis was suggested. (AR 21). The ALJ further indicated that

a consultative psychological evaluation in July 2001 found no
significant health/psychological capacity conditions or
limitations and a physical assessment in February 2002 indicated
that Plaintiff had a "light" level functional capacity.  (AR 21).
These medical source findings are consistent with the ALJ's
ultimate RFC determination.

Although the ALJ noted that subsequent psychological
evaluations were clearly in dispute, malingering was evidenced by
later examinations (*see, supra*) and treating source opinions
endorsing Plaintiff's cognitive dysfunction was, by admission, not
based on objective findings, but instead only on Plaintiff's
subjective reports, which were deemed not entirely credible in
this case.  (AR 21, 319-321, 396-397; *supra*).

The ALJ indicated that Plaintiff's physical therapy records
from June of 2004 related that she had improved to essentially a
light level functional capacity, with squat lifts of 22 pounds,
treadmill capacity of 15 minutes, and cervical ranges of motion
all within normal limits.  (AR 21).  It was also noted that the
state agency reviewing physicians found that Plaintiff physically
retained a medium level functional capacity and had no severe
medically determinable mental/psychological impairment condition
lasting 12 continuous months.  (AR 21).

The ALJ noted that medical expert, Dr. Craig, reported at the
administrative hearing that while Plaintiff's reported
symptomatology was consistent with her musculoskeletal injury
complaints, her medically indicated/accepted complaints were
improving within 12 months.  (AR 23).  Medical expert Dr. Bostwick
also opined that, despite indications of dementia and a cognitive

disorder, more of the consultative evaluations have indicated "no diagnosis" or "malingering." (AR 23). Dr. Bostwick also opined that Plaintiff did not have a severe medically determinable mental health impairment condition lasting 12 continuous months. (AR 23). He indicated that, at most, Plaintiff had mild limitations in her activities of daily living, social functioning and concentration, persistence and pace. (AR 23).

In addition, Plaintiff asserts that there were numerous objective tests which support her allegations of disability, including seven objective tests conducted at the Behavioral Assessment Counseling Center ("BACC"). (Ct. Rec. 15, p. 44). However, as noted by the Commissioner, the objective tests completed at the BACC indicated that Plaintiff was malingering (AR 242), had no diagnosable impairment (AR 247) and resulted in an assessed Global Assessment of Functioning ("GAF") score of 79 (AR 247).[3] (Ct. Rec. 22-2, p. 20).

Plaintiff also argues that Dr. McRae found that her results on the Beck Depression Inventory were indicative of a severe level of depression. (Ct. Rec. 15, p. 44). However, Dr. McRae noted that "[w]hile she appears somewhat depressed clinically in the interview, she does not appear to be depressed to that extreme, in my judgment." (AR 342). Dr. McRae concluded that "[w]hile she does appear to have some symptoms of depression, her whole cognitive portion of her mental status exam and performance on prior testing, and her complaints of medical problems, I believe,

---

[3]A GAF of 80-71 indicates: "If symptoms are present, they are transient and expectable reactions to psychosocial stressors . . .; no more than slight impairment in social, occupational, or school functioning." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

are placed into question by her apparent volitional decision to suggest that she has more memory problems that she has." (AR 343-344).

The undersigned finds that the ALJ's review and assessment of the medical evidence of record is without error. Substantial record evidence supports the ALJ's RFC determination that Plaintiff is limited to light exertion work with no evidence that she suffers from any significant mental capacity difficulties. (AR 23). While Plaintiff suggests a more favorable interpretation of the evidence, the ALJ's interpretation is rational and properly supported.[4] Plaintiff's general assertion of error with regard to the ALJ's evaluation of the medical evidence lacks merit.

**C.  Step Three**

Plaintiff asserts that the ALJ failed to take into account the combined effect of her physical and mental impairments. (Ct. Rec. 15, p. 34). Plaintiff argues that if the ALJ had considered the combined effects, he would have found that she equaled a Listings level impairment. (Ct. Rec. 15, pp. 34-41). Therefore, Plaintiff argues that the ALJ erred at step three of the sequential evaluation process.

It is Plaintiff's responsibility to prove that she is disabled at step three of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). Plaintiff bears the burden of establishing that her impairments satisfy the

---

[4]The Court must ultimately uphold the Commissioner's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). It is not the role of the Court to second-guess the Commissioner. If evidence supports more than one rational interpretation, the court must uphold the decision of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

requirements of a Listings impairment. *Tackett v. Apfel*, 180 F.3d
1094, 1098-1099 (9th Cir. 1999). As noted by the Commissioner, a
generalized assertion of functional problems is not enough to
establish disability at step three. *Id*. at 1100; (Ct. Rec. 22-2,
pp. 16-17).

Plaintiff generally asserts that she meets or equals Listings
1.00, 11.00, 12.02, and 12.04. (Ct. Rec. 15, pp. 39-40); 20
C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00, 11.00, 12.02, and
12.04. Plaintiff does not discuss the criteria for Listings 1.00
and 11.00, and, although she mentions the requirements of Listings
12.02 and 12.04, Plaintiff fails to cite specific evidence
supporting her argument that she meets or equals a Listings
impairment. (Ct. Rec. 15, pp. 34-41). "For a claimant to qualify
for benefits by showing that [her] . . . combination of
impairments is 'equivalent' to a listed impairment, [s]he must
present medical findings equal in severity to *all* the criteria for
the one most similar listed impairment." *Sullivan v. Zebley*, 493
U.S. 521, 531 (1990). As noted above, Plaintiff bears the burden
of establishing that her impairments satisfy the requirements of a
Listings impairment. *Tackett*, 180 F.3d at 1098-1099. Since
Plaintiff provides no evidence or discussion as to how she
specifically meets or equals a particular Listings impairment,
other than a generalized assertion, she fails in her burden to
demonstrate she is entitled to disability benefits at step three.

In any event, a review of the record, as correctly assessed
by the ALJ, does not demonstrate that Plaintiff's level of
functioning was consistent with meeting a Listings level
impairment. The ALJ properly found, consistent with the medical

evidence of record, that Plaintiff has the severe impairments of musculoskeletal injury complaints associated with an automobile accident, including dizziness, headache, right shoulder pain with vague symptomatology, vision difficulties, TMJ/bilateral jaw dysfunction, and a not-otherwise-specified neurological disorder, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 26). Based on the foregoing, Plaintiff failed to establish that she met or equaled the listings requirements of 1.00, 11.00, 12.02, and 12.04, and the ALJ did not err at step three of the sequential evaluation process in this regard.

**D. Vocational Expert Testimony**

Plaintiff also contends that the ALJ erred by relying on the vocational expert's testimony in this case. (Ct. Rec. 15, pp. 50-52). Plaintiff specifically asserts that reliance on the vocational expert's testimony was erroneous because his responses were based on an incomplete hypothetical. (Ct. Rec. 15, pp. 50-52).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v.*

*Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Therefore, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that Plaintiff can perform despite her identified limitations only after Plaintiff has established a prima facie case of disability by demonstrating she cannot return to her former employment. *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ can satisfy this burden by either (1) applying the grids or (2) taking the testimony of a vocational expert. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

At step four of the sequential evaluation process, the ALJ found that Plaintiff was able to perform her past relevant work and was therefore not disabled within the meaning of the Social Security Act. (AR 22-23). Accordingly, Plaintiff failed in her burden to demonstrate, at step four, that she could not return to her previous job. There was thus no need for the ALJ to continue to step five of the sequential evaluation process which would require a determination to be made regarding whether Plaintiff, despite her limitations, is capable of performing other work existing in sufficient numbers in the national economy. Moreover, as discussed above, the ALJ's RFC finding, which concluded that Plaintiff had no nonexertional limitations was proper in this case. *Supra*. Utilization of a vocational expert was not required by the Act in this case.

Nevertheless, as determined above, the weight of the record evidence in this case supports the ALJ's ultimate RFC finding that Plaintiff was capable of performing light exertion work with no determinable nonexertional limitations. *See supra*. The

vocational expert testified that with an ability to perform the full range of light work (which includes the ability to perform the full range of sedentary work), and with no nonexertional limitations, Plaintiff retained the capacity to perform "a fairly broad range" of work in the national economy. (AR 497). Since the vocational expert's testimony was based on a proper RFC finding by the ALJ, Plaintiff's argument that the hypothetical was incomplete is without merit.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Based on the foregoing, the undersigned concludes that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 14**) is **DENIED**.

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 22**) is **GRANTED**.

3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

**DATED** this __29ᵗʰ__ day of September, 2006.


_____s/Michael W. Leavitt_____
            MICHAEL W. LEAVITT
      UNITED STATES MAGISTRATE JUDGE